IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Samuel Green, | ) | C/A No. 0:14-1878-RMG-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Samuel Green, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

     (1)    whether the claimant is engaged in substantial gainful activity;

     (2)    whether the claimant has a "severe" impairment;

     (3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

     (4)    whether the claimant can perform his past relevant work; and

     (5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In January 2006, Green applied for DIB and SSI, alleging disability beginning March 22, 2005.  Green's applications were denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ").  A hearing was held on August 18, 2006, at which Green, who was represented by Rosemary Wessendorf, Esquire, appeared and testified.  After hearing testimony from a vocational expert, the ALJ issued a decision on September 3, 2008 concluding that Green was not disabled.  (Tr. 16-24.)

Green was born in 1972 and was thirty-two years old at the time of his alleged disability onset date.  (Tr. 99.)  He has a high school education and has past relevant work experience as an assembly line worker and a cook at a fast food restaurant.  (Tr. 122, 126.)  Green alleged disability due to neck and head pain, severe nerve damage to the left arm, and brachial plexus palsy.  (Tr. 121.)

In applying the five-step sequential process, the ALJ found that Green had not engaged in substantial gainful activity since March 22, 2005—his alleged onset date.  The ALJ also determined that Green's left brachial plexus injury was a severe impairment.  However, the ALJ found that Green did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that Green retained the residual functional capacity to

> perform a full range of work at all exertional levels but with the following nonexertional limitations:  no use of his left upper, nondominant, extremity; no climbing of ladders, ropes or scaffolds; and avoidance of hazards, including unprotected heights and dangerous machinery.



(Tr. 19.) The ALJ found that Green was unable to perform any past relevant work and that, considering Green's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Green could perform. Therefore, the ALJ found that Green was not disabled from March 22, 2005 through the date of his decision.

The Appeals Council denied Green's request for review on July 14, 2010 making the decision of the ALJ the final action of the Commissioner. (Tr. 5-7.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



## ISSUES

Green raises the following issues for this judicial review:

I.     The Commissioner failed to show at step five of the sequential evaluation process other work that the Plaintiff could perform.  The issue of the Plaintiff's ability to do substantial work remains undetermined despite the testimony of the vocational expert; the ALJ failed to comply with SSR 00-4p and SSR 96-9p.

II.    The ALJ failed to properly assess opinion evidence[.]

III.   The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8p.

(Pl.'s Br., ECF No. 12.)

## DISCUSSION

### A.     Step Five

When the ALJ's sequential evaluation reaches Step Five, the Commissioner bears the burden of providing evidence that other work exists in significant numbers in the national economy that a claimant could perform.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  As stated above, the Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant, 699 F.2d at 192.

Green argues that the testimony from the vocational expert failed to demonstrate that there were jobs available that Green could perform, and therefore, the ALJ's finding at Step Five is unsupported by substantial evidence.  Based on the transcript and the parties' briefs in this matter, the court agrees.

The ALJ's decision reflects the following with regard to the vocational expert's testimony:

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations.  To determine the extent to which these limitations



erode the occupational base of unskilled work at all exertional levels, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

Initially, the vocational expert testified that she could identify no jobs with the restrictions I had placed in my residual functional capacity and I adjourned the hearing. After adjourning I indicated to the vocational expert that I was surprised that she could not identify jobs because I had given a similar RFC to other VE's in different cases and they reported jobs. The vocational expert indicated to me that she said no jobs existed because the number of jobs she could identify were low; I told her that it was my job to determine whether substantial jobs existed or not. Because I determined an error had occurred, I reconvened the hearing with the representative, the claimant, and the vocational expert, in attendance. I then indicated on the record what had transpired as reported above, and that I wished to take additional testimony from the vocation[al] expert. The representative did not object and did not question the vocational expert as to the accuracy of my report.

The vocational expert then testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as surveillance system monitor (DOT code 379.367-010), of which there are 121 such jobs in South Carolina and 13,236 in the United States; flagger (DOT code 372.667-026), 1010 in South Carolina and 79,221 in the United States; lobby attendant (DOT code 344.667-014), 328 in South Carolina and 34,170 in the United States; and courier [(]DOT code 230.663-010), 1981 in South Carolina and 158,803 in the United States.

(Tr. 23.) The ALJ further found that the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Therefore, the ALJ found that other work existed in significant numbers in the national economy to which Green was capable of making a successful adjustment.

However, contrary to the ALJ's findings, the hearing transcript of the vocational expert's testimony does not support the ALJ's conclusion that Green can perform the above listed jobs. Specifically, the ALJ incorrectly indicates that the vocational expert actually testified that an individual with the limitations identified by the ALJ could perform those jobs. In fact, the transcript reflects when the ALJ initially presented the vocational expert with a hypothetical question that



included limitations corresponding to Green's residual functional capacity, the vocational expert

responded that there would not be jobs available that such an individual could perform. (Tr. 50-51.)

The vocational expert explained that "[b]ased on the fact that they have no use of the left upper

extremity, and that would affect the pushing and pulling on the light and medium work. And the fact

that in order to do sedentary work, you have to have good use of both hands and upper extremities."

(Tr. 51.) The ALJ continued to question the vocational expert as follows:

> Q      I keep thinking back to the old job of the TV monitor.
>
> A      I know, and we have -- we do still have those, but they are very, very few.
>
> Q      Well would those restrictions apply to that, or it would not?
>
> A      Well if for the TV monitoring you're going to have do some writing, and in some cases, moving about while carrying. So that would still need good use of both extremities.
>
> Q      What are you carrying?
>
> A      Well either you're carrying some of the paperwork or the tape from the monitor.
>
> Q      And why couldn't you carry that with your right upper extremity if it's the dominant arm?
>
> A      Well you could use it, but you would need in some cases you would need that left hand for support of something.
>
> Q      Okay.

(Tr. 50.) Upon further questioning by Green's counsel about the job of TV monitor or surveillance

monitor, the vocational expert explained that the job is still prevalent, and that it had been updated

to include other types of jobs or duties. The vocational expert explained that the only surveillance

jobs available would be in the gaming industry, "[b]ut even then you would have to detain people



at times, and that would seem a bit much." (Tr. 52.)  The ALJ then asked the vocational expert about

the job of flagger as follows:

> Q    And then the other job that comes to mind is the flag person on the highway.
> I've had VEs give me those jobs for a one-armed person, and I wondered why
> on this case that wouldn't be available.

> A    Well even with the flag holder, there are going to be times that they may do
> other duties.  Or they're going to have [INAUDIBLE] situations.  And other
> companies now because of the nature of the work, they probably get the
> [INAUDIBLE] as well.  So they probably get those duties, a little bit more,
> something different or something.  Or sometimes after a certain period of
> time, the flag would become maybe the driver or puller.  So it just varies.

(Tr. 53.)  The vocational expert explained that the job is called flagger and provided the DOT

number, explaining that it is light, unskilled work.  The ALJ then concluded the hearing.

The hearing then reconvened and the ALJ explained, as quoted above, that he had conversed

further with the vocational expert who indicated to the ALJ that she did not give him any jobs

because she did not think the numbers were relevant.  Based on their conversation, the ALJ believed

an error occurred.  The ALJ stated that the vocational expert is to decide the jobs based on the

restrictions given and the ALJ is to determine whether the numbers are relevant.  The vocational

expert indicated that she had the numbers for the jobs about which the ALJ inquired.  The ALJ

proceeded to continue his examination of the vocational expert as follows:

> Q    Well the question is with the restrictions I gave you, could those individuals
> do any jobs?

> A    They can do those jobs at sedentary, but they would still be restricted.

> Q    So are there numbers for people that could do those jobs or not?

> A    Yes.

> Q    Okay. Well --



A    There are numbers, yes.

Q    -- give me the numbers of people that could do those jobs.

A    The surveillance system monitor --

Q    Right.

A    -- in South Carolina, there are 121, national economy, 13,236.

CLMT:    That's national?

ATTY:    National.

**Examination of Vocational Expert by Administrative Law Judge**

A    As far as the flagger, there are 1,010.  In the national economy, there are 79,221.

Q    Now can you identify any other jobs with those restrictions?

A    The next one could be an art lobby attendant.

Q    L-O-B-B-Y?

ATTY:    That was art lobby?    Okay.

**Examination of Vocational Expert by Administrative Law Judge**

A    DOT number 344.677-014.  It's considered light, unskilled.  In South Carolina, there are 328, national economy, 34,170.  The next one would be a courier or a messenger.

Q    C-O-U-R-I-E-R?

A    DOT number 230.663-010.  It's light, unskilled.  In South Carolina, there are 1,981, national economy, 159,803.

Q    What sort of courier are we talking about?

A    A courier messenger in the office.  What they do is pick up inter house message, mail, and take it along.  They don't take it outside [INAUDIBLE].



Q       Can a one-handed individual do that work?

A       Some of them do if they're pushing the cart, and they just put the mail out of the box into the cart, or they get it out of the cart and put it into the person's desk.

ALJ:   I see.  Questions of Ms. Cornelius?

ATTY:        Yes.

**Examination of Vocational Expert by Claimant's Attorney**

Q       The numbers that you gave us for the South Carolina, for the national economy, is that taking into account the fact that he has one arm, or would that have an effect on these numbers?

A       That has the effect that the person with the limitations can do those type jobs.

Q       Okay. So that does take into account –

A       Yes.

Q       Okay.

(Tr. 55-57.)

Therefore, the ALJ's finding that the vocational expert "testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as surveillance system monitor . . . ; flagger . . . ; lobby attendant . . . ; and courier" is unsupported by the record.  (Tr. 23.)  The vocational expert's testimony clearly explains why an individual with Green's limitations as posited by the ALJ's hypothetical question could not perform the job of surveillance system monitor or flagger.  Additionally, the vocational expert explained that with the restrictions given, the individual could perform those jobs "at sedentary, but they would still be restricted."  (Tr. 55.)  But the jobs of lobby attendant and courier were classified, per the vocational expert's testimony, as light work, a level she had just testified Green would not be able to do based



on the limitations posited by the ALJ.  The vocational expert's testimony does not reflect that she indicated the individual could perform any of the jobs listed; rather, she appears to be simply giving the ALJ availability numbers for those jobs at his request.

Even if the court were to find that the vocational expert's testimony was contradictory with itself, rather than inconsistent with the ALJ's findings, the ALJ did not address this inconsistency, and therefore, the opinion would nonetheless remain unsupported by substantial evidence.  See, e.g., Lugo v. Chater, 932 F. Supp. 497, 504 (S.D.N.Y. 1996) (Sotomayor, J.) (" Proper use of vocational testimony presupposes both an accurate assessment of the claimant's physical and vocational capabilities, and a consistent use of that profile by the vocational expert in determining which jobs the claimant may still perform.  Neither occurred here.  The exchange between the ALJ and the vocational expert was hopelessly muddled, forming an unacceptable basis for the ALJ's decision regarding [the claimant's] disabilities and capacity for substantial employment."); Goelling v. Astrue, C/A No. 7:09cv00225, 2010 WL 3733538, at *9 (W.D. Va. Aug. 30, 2010) ("On this record, the court simply cannot say that the ALJ's decision is supported by substantial evidence.  The VE is all over the board on this issue, and his testimony is incapable of producing a reliable assessment as to [the claimant's] work opportunities."); Howard v. Commissioner, No. Civ. A. 04-5286, 2006 WL 328403, at *2 (E.D. Pa. Feb. 10, 2006) (noting, in an order denying EAJA fees, that the court had remanded the case to the Commissioner to clarify an inconsistency created when the vocational expert recanted his testimony during the hearing regarding whether the claimant could return to his previous job and the ALJ did not mention the inconsistent testimony in his decision).

**B.    Other Issues**

Based on the record before the court, the court finds that based on the lack of clarity in the record and the ALJ's decision regarding the testimony of the vocational expert, rather than remanding for an award of benefits, this matter should be remanded for further explanation and additional testimony from the vocational expert, if necessary. See, e.g., Radford v. Colvin, 734 F.3d 288, 294-95 (4th Cir. 2013) ("Although we hold that the district court did not apply the wrong legal standard, we nonetheless vacate its judgment because it chose the wrong remedy:  Rather than 'reversing' the ALJ and remanding with instructions to award benefits to Radford, the district court should have vacated and remanded with instructions for the ALJ to clarify why Radford did not satisfy Listing 1.04A."); see also Buckner v. Apfel, 213 F.3d 1006, 1011 (8th Cir. 2000) (noting that when the court finds the Commissioner's denial of benefits to be improper, the court's "abundant deference to the ALJ" cautions in favor of remand, and entering an immediate finding of disability is appropriate only if the record "overwhelmingly supports" such a finding); Timmerman v. Comm'r of Soc. Sec., C/A No. 2:07-3745-HFF-RSC, 2009 WL 500604 (D.S.C. Feb. 26, 2009) (observing that factors in deciding whether to remand for consideration of additional evidence or for an award of benefits include:  that deference cautions in favor of remand, plaintiff's court submissions include requests that this matter be remanded, and when evidence in the record does not overwhelmingly support a finding of disability).

Further, at least one of Green's remaining issues is impacted by the above issue.  In light of the court's finding that this matter should be remanded for further consideration, the court need not address Green's remaining issues, as they may be rendered moot on remand.  See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address



claimant's additional arguments).  Moreover, if necessary, Green may present his additional arguments on remand, such as his arguments regarding the ALJ's evaluation of the opinion evidence, which may impact the ALJ's treatment of Green's other impairments as well as the residual functional capacity assessment.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

May 5, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>see</u> Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).