## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Samuel Green, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 0:14-1878-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on May 12, 2015, recommending that the Commissioner's decision be reversed and remanded because of confusion regarding the opinion testimony offered by the vocational expert necessary at Step Five of the Sequential Process. (Dkt. No. 16 at 6-11). The Commissioner has advised the Court that she does not intend to file objections to the Report and Recommendation of the Magistrate Judge. (Dkt. No. 17). The Court adopts a portion of the Report and Recommendation, pages 1-11, as the order of the Court and makes further findings and determinations, as set forth below.

### Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to

Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Further, even if a claimant's condition does not meet all of the requirements of a listing, a claimant may be declared disabled at Step Three if she is able to show that another impairment or combination of impairments are the medical equivalent of the listed impairment. 42 U.S.C. § 423(c)(2)(b); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1526(b).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the

national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

The claimant has the burden of establishing that he satisfies Steps One through Four of the Five Step Sequential Process. The Commissioner, however, carries the burden of providing evidence at Step Five to demonstrate that there are a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002). The Commissioner may carry her burden by obtaining testimony from a vocational expert. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). Once the Plaintiff has satisfied the requirements of Steps One through Four, the Plaintiff will be deemed disabled if the Commissioner is unable to demonstrate at Step Five the availability of a significant number of jobs in the national economy for persons with a claimant's impairments.

**Factual Background**

Plaintiff was injured in a motorcycle accident in March 2005 that resulted in his "brachial plexus roots . . . likely pulled out at the spinal cord" and "left sided complete brachial plexus palsy." (Dkt. No. 6-8 at 36). Thereafter, Plaintiff had "profound paralysis of the left upper extremity" with no functional use of his left shoulder, arm and hand. (*Id.* at 57, 82). Plaintiff underwent surgery for his brachial plexus injury in 2006, but the damage was irreversible. (*Id.* at 36). Plaintiff has not worked since his March 22, 2005 injury. (Dkt. No. 6-2 at 19).

An administrative hearing regarding Plaintiff's disability claim was conducted on May 20, 2008. Plaintiff testified concerning his left brachial plexus injury as well as problems with his back and neck. (*Id.* at 30-49). A vocational expert, Mary Cornelius, also testified because of the Commissioner's obligation to establish the presence of a significant number of jobs in the national economy that the claimant could perform. The Administrative Law Judge ("ALJ")

posited a hypothetical question to the vocational expert describing Plaintiff's education, past work experience and the inability to use his left upper extremity. He asked if there were available jobs Plaintiff could perform. Ms. Cornelius stated unequivocally: "No, your honor, there would not be." (*Id.* at 51-52). The ALJ appeared surprised with the vocational expert's answer and asked for an explanation. Ms. Cornelius then stated that the inability of Plaintiff to use his left upper extremity "would affect pushing and pulling on the light and medium work. And the fact that in order to do sedentary work, you have to have good use of both hands and upper extremities." (*Id.* at 52). The ALJ persisted, asking about a TV monitoring position and a highway flagger. Again, Ms. Cornelius stated that in her opinion these positions required the use of two hands. (*Id.* at 52-55). The hearing was then closed. (*Id.* at 56).

Plaintiff was represented at the hearing by a non-attorney, and both Plaintiff and his representative left the room. The ALJ then engaged in an ex parte discussion with the vocational expert indicating his surprise with her answers. (*Id.* at 56). After his off-the-record discussion with Ms. Cornelius, the ALJ then reopened the record, brought the non-attorney representative and Plaintiff back into the room, and commenced questioning Ms. Cornelius again. The questioning and Ms. Cornelius' responses were a picture of confusion. It was not clear from her answers whether she was merely providing national and local numbers for positions she already indicated Plaintiff could not perform or had altered her previously firmly held opinions after the ex parte discussion with the ALJ. (*Id.* at 56-59).

The ALJ issued an order in this matter on September 3, 2008, finding that Plaintiff's only severe impairment was a left brachial plexus injury and that the claimant had the residual functional capacity to perform the full range of work at all exertional levels with minimal

limitations. (Dkt. No. 6-2 at 19-20). The ALJ mentioned the initial testimony of the vocational expert, the ex parte discussion he had with the witness after the close of the record, and his decision to reopen the record to further question Ms. Cornelius. The ALJ found that the vocational expert gave the opinion that there were numerous positions in the national economy Plaintiff could perform. The ALJ then identified at least two specific positions (surveillance system monitor and flagger) that the vocational expert testified specifically Plaintiff could not perform with his physical limitations. (*Id.* at 23-24). The ALJ concluded that with the availability of jobs in the national economy, Plaintiff was not disabled and not entitled to disability benefits under the Social Security Act. A request for review was unsuccessfully, pursued to the Appeals Council and Plaintiff thereafter filed an appeal to this Court.[1]

## Discussion

The hearing record is seriously deficient with regard to the vocational expert's testimony. As the Magistrate Judge ably summarized in her R & R, Ms. Cornelius initially provided a clear and unequivocal opinion that Plaintiff's severe left brachial plexus injury and paralysis prevented him from performing any job in the national economy. Then, after the off-the-record discussion between the ALJ and the witness, the vocational expert provided further testimony that either completely contradicted her earlier testimony or merely recounted to the ALJ the total number of jobs available in certain job categories in which Plaintiff was unable to perform because of his impairment. Either way, the testimony is so confused and inconsistent that it cannot possibly constitute substantial evidence to support a finding that there are a significant number of jobs in

---

[1] The Appeals Council decision denying review was rendered on July 14, 2010, and Plaintiff then obtained various extensions of time to file his civil action. The appeal was filed with this Court on May 9, 2014, and the R & R was issued on May 12, 2015.

the national economy available to Plaintiff in light of his impairments. Thus, the Court adopts pages 1-11 of the R & R as the order of the Court. (Dkt. No. 16 at 1-11).

But more needs to be said about the conduct of the ALJ in this matter. The administrative hearing process regarding disability claims adjudicate important rights of claimants. The Due Process Clause of the Fifth Amendment entitles claimants to a neutral fact finder and a decision based upon the evidence elicited during the hearing process. *See also* 42 U.S.C. § 405(b)(1) (A hearing decision shall be based "on the evidence adduced at the hearing."). Ex parte communications are "anathema in our system of justice." *Guenther v. Comm'r*, 889 F. 2d 882, 884 (9th Cir. 1989). "Judges are supposed to get their evidence from the testimony and exhibits, not private chats." *Ludwig v. Astrue*, 681 F. 3d 1047, 1051 (9th Cir. 2012). To overturn an administrative decision because of an ex parte communication requires a showing of actual prejudice to the claimant. *Id.* at 1054.

The communications between the ALJ and the vocational expert in this matter are deeply troubling. The Commissioner had the burden of demonstrating that there were jobs in the national economy Plaintiff could perform. When Ms. Cornelius testified that there were no such jobs and the record was then closed, Plaintiff was for all practical purposes entitled to judgment as a matter of law. The ALJ's ex parte communication that followed demonstrated a lack of neutrality and converted the ALJ into an advocate of the agency position rather than an impartial adjudicator. That is not the proper role of an administrative law judge. When the ALJ then went back on the record, any subsequent testimony by the vocational expert, after being brow beat by the judge, was tainted and suspect and highly prejudicial to Plaintiff.

The Court carefully considered the option of reversing the decision of the Commissioner

and remanding the matter to the agency with an order to award benefits. Out of deference to the agency, the Court will, at this point, not take that step. The Court finds that the ex parte communication between the ALJ and the vocational expert and subsequent reopening of the record to take further testimony from the vocational expert denied Plaintiff due process of law. Therefore, the Court strikes from the record any testimony offered by the vocational expert after the initial close of the record and before the ex parte communication occurred. (Dkt. No. 6-2 at 56). The decision of the Commissioner is reversed and remanded to the agency to determine if the Commissioner has carried her burden at Step Five based solely upon the record absent the stricken testimony.[2]

## Conclusion

The decision of the Commissioner is hereby REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) and REMANDED to the Commissioner for further action consistent with this Order. In light of the protracted nature of these administrative proceedings, the Commissioner is directed to render an administrative decision within ninety days of this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
June 3, 2015

---

[2] In light of the Court's decision to reverse and remand on the basis of the Step Five issue, it is unnecessary to address the other issues raised by Plaintiff on appeal.